# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Judge Curtis G. Clark, Former Abbeville County Master-in-Equity, Respondent.

Appellate Case No. 2025-002528

---

Opinion No. 28322
Submitted February 20, 2026 – Filed March 18, 2026

---

## PUBLIC REPRIMAND

---

Disciplinary Counsel William M. Blitch, Jr., and
Assistant Disciplinary Counsel Kristina Jones Catoe,
both of Columbia, for the Office of Disciplinary Counsel.

Harvey M. Watson, III, of Ballard & Watson, Attorneys
at Law, of West Columbia, for Respondent.

---

**PER CURIAM:**   In this judicial disciplinary matter, Respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21, RJDE, Rule 502, SCACR.  In the Agreement, Respondent admits misconduct, agrees to pay costs, and consents to the imposition of a letter of caution, a confidential admonition, or a public reprimand.  Respondent also agrees never to seek nor accept a judicial office in South Carolina in the future.  We accept the Agreement and publicly reprimand Respondent, the most severe sanction we are able to impose under these circumstances.

## I.

Respondent served as a special referee in Abbeville County from 1999 to 2001, before serving as a master-in-equity in Abbeville County from 2001 to 2019. Respondent also served as a probate court judge and special referee in Greenwood

County beginning in 1987. As a special referee and master-in-equity, Respondent was responsible for conducting auctions for property previously subject to foreclosure proceedings. In April 2022, a local newspaper published an investigative article regarding Respondent presiding over auctions that resulted in Respondent deeding properties to his family members after their bids were the highest at the auction. This article also mentioned instances in which Respondent's family members were hired by a third-party company to bid on property for the company. On April 11, 2022, former Chief Justice Beatty issued an administrative order indefinitely barring Respondent from acting or serving as a special referee in any foreclosure matter in this state.[1]

A third-party company (Company) provides bidding agents for auctions of foreclosed property in locations throughout South Carolina, including those in which Respondent formerly presided. Due to the large volume of auctions in certain locations, Company would contact Respondent's office and ask for assistance with obtaining an agent to bid at auctions. Respondent would provide names of individuals, including his wife and other family members, as potential bidding agents. Company provided the bidding instructions to the bidding agents and compensated the bidding agents a flat fee negotiated between the agent and the Company. On numerous occasions, a member of Respondent's family served as a bidding agent for a property that was sold at an auction Respondent conducted.

In 2015, Respondent and his family became aware of two pieces of property near Respondent's home were facing potential foreclosure. Property One was a 33-acre tract of land, and Property Two was a 2.79-acre tract that included a home. Respondent and his family discussed the properties prior to the foreclosure proceedings and auctions because Respondent's son and daughter expressed interest in purchasing the properties. Respondent's son expressed interest in Property One, which came up for auction in 2016. Respondent conducted both the hearing that resulted in the foreclosure of that property and the auction in which his son was the highest bidder on the property. Respondent then provided his son with the necessary funds to satisfy the bid.[2] Between the hearing and the auction, there

---

[1] *In re Special Referee Appointments*, S.C. Sup. Ct. Order dated Apr. 11, 2022. (Appellate Case No. 2022-000468).

[2] In his initial response to the Notice of Investigation on May 31, 2022, Respondent represented that different circumstances surrounded this exchange of funds. However, in an April 17, 2023 response to ODC's request for additional information, Respondent admitted providing the funds to his son for the purchase of Property One.

was a period of at least three weeks in which another special referee could have been designated to conduct the auction of Property One. Respondent maintains that he was not involved in any pre-auction negotiations regarding Property One. Shortly after purchasing Property One, Respondent's son decided that he did not want the property due to his business issues. However, Respondent's son kept Property One for a period of time while awaiting foreclosure on Property Two, which Respondent's daughter wished to purchase.

Prior to the initiation of foreclosure proceedings on Property Two, Respondent and his daughter attempted to negotiate a short sale, but these attempts were not successful. Upon notice that Respondent had been appointed to serve as special referee for the foreclosure proceedings related to Property Two, Respondent removed himself as the special referee because of his involvement in the prior negotiations. Another lawyer served as special referee for the foreclosure on Property Two and eventually issued an order of foreclosure. The Greenwood County Clerk of Court conducted the subsequent sale of Property Two by auction. Respondent's daughter prevailed as the highest bidder at the auction in 2017. Respondent provided his daughter with the necessary funds to satisfy the bid. In 2018, Respondent's daughter repaid him for the monies he expended for the original purchase through a cash-out loan that was secured by Property Two.

Thereafter, Respondent's daughter attempted to obtain driveway access to Property Two. After consulting with the Greenwood County Planning and Zoning Department, Respondent's family determined that the best method for Respondent's daughter to obtain the necessary access was for Respondent's son to deed Property One to Respondent's daughter. Respondent's daughter subsequently deeded Property One to Respondent to compensate Respondent for the monies he provided his son for the original purchase of Property One. Respondent then granted a private easement across Property One for his daughter to access Property Two.

Additionally, Respondent's wife bid on numerous properties auctioned by Respondent and other special referees, both as a bidding agent for Company and in her personal capacity. In her personal capacity, Respondent's wife also had arrangements with other partners and other third parties who bid on property and assigned the bid or a portion of the bid to her. After being deeded the purchased properties, Respondent's wife rented out many of them and deposited the proceeds into a bank account jointly held with Respondent. Respondent represents that his name was on the account for administrative purposes only; however, Respondent and his wife reported all income from the rental properties yearly on their joint income tax return. Respondent represents that not all rental income-generating

properties owned by he and his wife were obtained via judicial sale. However, some of the properties auctioned by Respondent as a special referee were purchased by his wife and generated rental income.

During the course of Respondent's November 2012 screening by the Judicial Merit Selection Commission, Respondent was questioned about a concern received by the Commission about Respondent's wife bidding on judicial sales over which Respondent presided. Respondent responded to the concern from an undisclosed party by discussing a particular circumstance where Respondent's wife had bid on a property in Laurens County on behalf of Company. Respondent states a local attorney observed the bidding and expressed concern about Respondent's wife's role. Respondent did not disclose to the Commission that his wife also bid individually on judicial sales over which he presided. Respondent represents that he did not mention this because there was only one circumstance in which an attorney expressed a concern about Respondent's wife's role in bidding on properties, and Respondent assumed the Commission's question referenced only that particular incident, which occurred outside of Abbeville and Greenwood counties. Respondent represents that his response was limited at that time to the incident and that he considered his answer complete at the time it was made.

Respondent further represents that he is approaching retirement and has reduced his practice of law to engage with legal matters only about three days per week.

## II.

Respondent admits that his conduct violated the following provisions of the Code of Judicial Conduct, Rule 501, SCACR: Canon 1 (requiring a judge to uphold the integrity of the judiciary); Canon 1A (requiring a judge to maintain and personally observe high standards of conduct); Canon 2 (requiring a judge to avoid impropriety and the appearance of impropriety in all activities); Canon 2A (requiring a judge to act at all times in a manner that promotes public confidence in the integrity of the judiciary); and Canon 4D(1)(a) (forbidding a judge from engaging in financial and business dealings that may reasonably be perceived to exploit the judge's judicial position).

Respondent further admits his misconduct is a ground for discipline under Rule 7(a)(1), RJDE, Rule 502, SCACR (providing a violation of the Code of Judicial Conduct is a ground for discipline). As a condition of discipline, Respondent

agrees not to seek or accept appointment as a special referee in South Carolina in the future.[3]

In his affidavit in mitigation, Respondent emphasizes his almost forty years of service as a probate judge, master-in-equity, and special referee. Respondent also details his other service to the bench and the Bar, including service on the Probate Judges Advisory Committee, as course planner for the equity portion of the former Bridge the Gap program for newly admitted lawyers, and as an editor of the first edition of the South Carolina Foreclosure Law Manual. Respondent expresses remorse, notes his cooperation with the ODC investigation, and emphasizes that neither he nor any of his friends or family members "ever acted upon any non-public information in connection with an auction." However, Respondent acknowledges how third-party observers might have reasonably thought otherwise and how that would undermine public confidence in the integrity of the proceedings. Respondent also notes his lack of prior disciplinary history and four character letters attached to his affidavit, all of which vouch for him personally and professionally. Respondent urges this Court to impose a nonpublic sanction because he intends to retire soon and there is therefore little need to protect the public or prompt him to conform his future conduct with the relevant ethical obligations.

## III.

Because Respondent no longer serves in any judicial capacity and because he has agreed not to seek or accept appointment as a special referee in South Carolina in the future, we accept the Agreement and issue a public reprimand. This is the strongest punishment we can give Respondent, given the fact that he no longer holds judicial office. *See In re Gravely*, 321 S.C. 235, 467 S.E.2d 924 (1996) ("A public reprimand is the most severe sanction that can be imposed when the respondent no longer holds judicial office.") Accordingly, Respondent is hereby publicly reprimanded for his misconduct. Within thirty days, Respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Judicial Conduct.

---

[3] Respondent remains subject to this Court's April 11, 2022 administrative order indefinitely prohibiting him from serving as a special referee anywhere in this state.

**PUBLIC REPRIMAND.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**